UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **KEITH MEARS,** | Civil Action No. 24-6008 (MCA) |
| **Plaintiff,** | |
| v. | **MEMORANDUM OPINION** |
| **DETECTIVE N. CASALE, et al.,** | |
| **Defendants.** | |

This matter has been opened to the Court by Keith Mears filing of a civil complaint and an application to proceed in forma pauperis ("IFP application"). (ECF Nos. 1, 1-1.)

The instant Complaint was received by the Court on May 10, 2024 and is dated May 1, 2024. (ECF No. 1, Complaint at 9.) Plaintiff's cover letter states that "[t]his will be my 2nd time sending this out to the Court but no one reach back out to me as of yet" and notes that Plaintiff has been in the medical department for over nine months. (ECF No. 1-1 at 1.) Plaintiff's account certification and IFP application are dated October 12, 2023.[1] There is no record that the Clerk of the Court received a complaint and IFP application from Plaintiff in October 2023, when Plaintiff

---

[1] The Prison Litigation Reform Act of 1995 (the "Act"), which amends 28 U.S.C. § 1915, establishes certain financial requirements for prisoners who are attempting to bring a civil action *in forma pauperis* ("IFP"). Under the Act, a prisoner bringing a civil action *in forma pauperis* must submit an affidavit, including a statement of all assets, which states that the prisoner is unable to pay the fee. 28 U.S.C. § 1915(a)(1). The prisoner also must submit a certified copy of his inmate trust fund account statement <u>for the six-month period immediately preceding the filing of his complaint.</u> 28 U.S.C. § 1915(a)(2). The prisoner must obtain this statement from the appropriate official of each prison at which he was or is confined. *Id.* Here, the Complaint was signed May 1, 2024, but the account statement Plaintiff provides is not for the six-month period immediately preceding the filing of his Complaint.

purports to have submitted it, and he has not provided any documentary evidence showing that he submitted a complaint and IFP application to prison officials for filing in October 2023.

At this time, the Court denies the IFP application without prejudice and screens the Complaint for dismissal under §§ 1915A and 1915(e)(2)(B). *See Brown v. Sage*, 941 F.3d 655, 660 (3d Cir. 2019) (construing § 1915(e)(2)(B)) ("[A] court has the authority to dismiss a case 'at any time,'. . . regardless of the status of a filing fee; that is, a court has the discretion to consider the merits of a case and evaluate an IFP application in either order or even simultaneously.").

Under the Prison Litigation Reform Act, Pub. L. 104-134, §§ 801–810, 110 Stat. 1321-66 to 1321-77 (Apr. 26, 1996) ("PLRA"), district courts must review prisoner complaints when the prisoner is proceeding *in forma pauperis*. *See* 28 U.S.C. § 1915(e)(2)(B). The PLRA directs district courts to *sua sponte* dismiss claims that are frivolous or malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B). Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). At the pleading stage, the Court accepts the facts alleged in the pro se complaint as true, draws all reasonable inferences in the plaintiff's favor, and asks only whether the complaint, liberally construed, contains facts sufficient to state a plausible claim. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations, however, do not suffice. *Iqbal*, 556 U.S. at 678.

In the Complaint, Plaintiff alleges that on November 27, 2021, Shaheid Salaam ("Salaam") was shot and killed in Newark, New Jersey. (Complaint at 2.) Police found Salaam with gunshot wounds lying on South Orange Avenue near South 18th Street, and he later died at the hospital at approximately 12:23 am. (*Id.*)

The Essex County Prosecutor's Office asked Plaintiff to come in for questioning. On December 14, 2021, Detective N. Casale and another officer questioned Plaintiff about Salaam's murder, and the interrogation was recorded. (Complaint at 3.) Plaintiff told Detective Casale he did not kill Salaam; Casale stated that he knew that but that Plaintiff knew who did. (*Id.*) Plaintiff alleges that he was "unconstitutionally charged" with first-degree murder, conspiracy, and weapons charges because he "did not provide the answers [Detective] Casale wanted." (*Id.* at 3.) Plaintiff further states that the named defendants, i.e. Casale and John and Jane Doe, "know Plaintiff did not kill [Salaam], and know that Plaintiff had nothing to do with his death, and know that Plaintiff did not know why [Salaam] was shot." (*Id.*)

Plaintiff further contends that these violations were committed by Casale and "defendants" and that supervisors failed to properly train and supervise Casale. (*Id.*) Plaintiff further contends that the "State Defendants violated his 4th, 5th, 6th, 8th, and 14th amendment rights, as well as his rights to be free from unlawful arrest and detention, false imprisonment, and malicious prosecution without probable cause." (*Id.* at 3.)

Plaintiff provides what appears to be a single page from his 66-page statement to police on December 14, 2021. (*Id.* at 4.) In that statement, the following exchange occurs between Casale and Plaintiff:

> Det. Casale: . . . . I've known from the get go you've been bullshitting me. Because at five o'clock, between five and six that day, you were in the driveway with Rock. Okay. You left in the

truck.  You came back after nine o'clock.  You went from the truck to the Chrysler and back to the truck.  Okay.

Then at 11:10, you park like you said.  You gave me some details that are correct.  You park on South 18th Street, facing South Orange Avenue.  You get out.  That was you in one of those pictures.  You got out, and you walked on South Orange Avenue,  Okay.  So let's start being honest with each other here, Keith.  Okay.  Because again, I don't think you killed anyone.

Mr. Mears:  I didn't kill anybody.

Det. Casale:  I know you didn't.  But you know who did.

Mr. Mears: If I did – say I did find out who it was, then I can tell him to turn himself in.

Det. Casale:  What?

Mr. Mears:  Like if I find out.  If I find out then I'll get him to come and turn himself in.  And then what?

Det. Casale:  That's not for me to decide.  That's up to the prosecutors.  What you have to do right now is stop bullshitting me okay, and tell me who that person is.  Stop.  Stop.

Mr. Mears:  I was with a female.

Det. Casale:  Keith, stop.  Keith, Keith, you were not with a female.  So you're telling me a female is who killed Shah.

Mr. Mears:  I don't know who killed Shah.

Det. Casale:  Keith, you were there.  You were just – see, Keith, we were just on the cusp here, right.  We were just on the cusp of you being a man and stepping to it.  Okay.  Because like you said, what have I said from the start.  You didn't pull the trigger.  Okay, you didn't do it.

Mr. Mears:  I didn't shoot anybody.

Det. Casale:  I know you didn't, Keith.  So tell me who did.

Mr. Mears:  I don't know.

Det. Casale:  Yes, you do.  Look me in the eye when I'm talking to you.  You can't even do that.

Mr. Mears:  I could look you in the eye.

Det. Casale:  Yes, now tell me that you don't know.

Mr. Mears:  I don't know.

(Complaint at 4.)

Plaintiff alleges that the "supervisor[s] went to the grand jury and had Plaintiff indicted for [first] degree murder, [first] degree conspiracy, [first] degree unlawful possession of a weapon, and [first] degree possession of a weapon for an unlawful purpose. When in fact they knew he was innocent." (*Id.* at 5.)

On December 21, 2021, Defendant Casale and others allegedly

> executed an erroneous and false complaint before the Judge of the County Court of Essex County falsely stating that Plaintiff did, on November 27, 2021[,] unlawfully and willingly commit an act in violation of 2C:11-3A. As a result of this false complaint, a warrant for Plaintiff's arrest was issued on December 14, 2021.

(*Id.* at 7.) Plaintiff further contends that he has been imprisoned for six months on the false charges.[2] According to Plaintiff, the charges were "caused to be issued" by Defendant Casale "for reasons unknown to Plaintiff at this time." (*Id.*)

Plaintiff seeks damages for humiliation, embarrassment, severe mental anxiety and distress, physical injuries, and loss of earnings that resulted from his alleged false arrest and imprisonment. (*Id.*) He also seeks damages for his alleged malicious prosecution. (*Id.* at 8.)

Plaintiff Complaint alleges violations of his civil rights under 42 U.S.C. § 1983. "To establish a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a violation of a right protected by the Constitution or the laws of the United States committed by a person acting under the color of state law." *Natale v. Camden Cnty. Correctional Facility*, 318 F.3d 575, 580–81 (3d Cir. 2003) (citations omitted).

The Court construes Plaintiff to raise Fourth Amendment claims under 42 U.S.C. § 1983 for false arrest, false imprisonment, and malicious prosecution against Casale, his supervisors who filed the charges, and potential John and Jane Doe defendants. "To bring a claim for false arrest,

---

[2] If Plaintiff was arrested in December 2021 and originally submitted his complaint in October 2023, he would have been detained for over 20 months.

a plaintiff must establish (1) that there was an arrest; and (2) that the arrest was made without probable cause." *Harvard v. Cesnalis*, 973 F.3d 190, 199 (3d. Cir. 2020).  In a similar vein, a plaintiff alleging false imprisonment "must establish: (1) that he was detained; and (2) that the detention was unlawful." *Id.* at 202.  To state a malicious prosecution claim, a plaintiff must establish:

> (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in [the plaintiff's] favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*Halsey v. Pfeiffer*, 750 F.3d 273, 296-297 (3d. Cir. 2014); *see also Johnson v. Knorr*, 477 F.3d 75, 81-82 (3d Cir. 2007) (explaining that a malicious prosecution claim also requires a plaintiff to show that the defendant initiated and pursued a criminal proceeding without probable cause) (citing *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003) ).

Probable cause to arrest exists when facts and circumstances within a police officer's knowledge would convince a reasonable person that an individual has committed an offense. *See Beck v. Ohio*, 379 U.S. 89, 91 (1964); *United States v. Myers*, 308 F.3d 251, 255 (3d Cir.2002).  Thus, the relevant inquiry is not whether the individual actually committed the crime for which he or she was arrested, but whether the officer had probable cause to believe so at the time of the arrest.  *See Groman v. Township of Manalapan*, 47 F.3d 628, 634-35 (3d Cir. 1995).  "Probable cause . . . requires more than mere suspicion; however, it does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt." *Zimmerman v. Corbett*, 873 F.3d 414, 418 (3d Cir. 2017) (citing *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482–83 (3d Cir. 1995)).  In addition, "the probable cause standard does not require officers to correctly resolve credibility determinations or conflicting evidence."  *Gentles v. Borough of Pottstown*, 2023 WL

4993198, at *2 (3d Cir. Aug. 4, 2023) (citing *Wright v. City of Philadelphia*, 409 F.3d 595, 603 (3d Cir. 2005)).

In addition, when an arrest is based on a valid warrant, courts conduct a two-pronged analysis to determine whether probable cause existed. *See Andrews v. Scuilli*, 853 F.3d 690, 697 (3d Cir. 2017). The Court asks, "first, whether the officers, with at least a reckless disregard for the truth, made false statements or omissions that created a falsehood in applying for the warrant, and second, whether those assertions or omissions were material, or necessary, to the finding of probable cause." *Id.* (citing *Wilson v. Russo*, 212 F.3d 781, 786–87 (3d Cir. 2000) (internal quotation marks and alteration omitted)).

Plaintiff appears to allege that there was no probable cause to arrest, imprison, or prosecute him because Plaintiff told Casale during his interrogation that he did not kill anyone, and Casale told Plaintiff that he believed him.[3] These facts, standing alone, do not show a lack of probable cause to arrest Plaintiff because "the arresting officer's subjective beliefs about the existence of probable cause are not relevant." *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 272 (3d Cir.2000) (citing *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)).

Moreover, although Plaintiff alleges that he was arrested pursuant to a judicial warrant, he does not provide the facts that he believes were falsely added or recklessly omitted from his arrest warrant. The Court is unable to assess whether Casale, with at least a reckless disregard for the truth, made false statements or omissions that created a falsehood in applying for the warrant, and

---

[3] In addition, the Constitution does not bar a police officer from misleading a suspect during interrogations in order obtain information or a confession as long as the police officer does not coerce the suspect to speak. *See Illinois v. Perkins*, 496 U.S. 292, 297 (1990) ("[p]loys to mislead a suspect or lull [a suspect] into a false sense of security that do not rise to the level of compulsion or coercion to speak are not within *Miranda* [*v. Arizona*, 384 U.S. 436 (1966)]'s concerns").

whether those assertions or omissions were material, or necessary, to the finding of probable cause. Plaintiff's conclusory allegations that he was arrested and prosecuted without probable cause are too conclusory absent these crucial facts. *See Gentles*, 2023 WL 4993198, at *2 (affirming the district court's conclusion that bare allegations of a falsified affidavit of probable cause was insufficient to state false arrest and malicious prosecution claims where the plaintiff "failed to discuss the contents of that affidavit"). Under these circumstances, Plaintiff fails to show defendants lacked probable cause to arrest, imprison, or prosecute him, and the Fourth Amendment claims are dismissed without prejudice on that basis. The supervisory claims premised on failure to train and supervise Casale or other investigators are likewise dismissed without prejudice because Plaintiff fails to plead sufficient facts showing that he was arrested without probable cause, falsely imprisoned, or maliciously prosecuted.

In addition, although "a Fourth Amendment claim under § 1983 for malicious prosecution does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence[,]" a plaintiff must "show that the criminal prosecution ended without a conviction." *Thompson v. Clark*, 596 U.S. 36, 49 (2022). Here, Plaintiff malicious prosecution claim is subject to dismissal without prejudice because he has not alleged any facts showing that the proceedings ended without a conviction.

Plaintiff also alleges that his Fifth Amendment rights were violated, presumably in connection with his interrogation. But a violation of the Fifth Amendment right against self-incrimination occurs only when an allegedly improper confession is used against him at trial. *See Chavez v. Martinez*, 538 U.S. 760, 773 (2003); *Renda v. King*, 347 F.3d 550, 557 (3d Cir. 2003); *Giuffre v. Bissell*, 31 F.3d 1241, 1256 (3d Cir. 1994); *see also Large v. Cnty. Of Montgomery*, 307 F. App'x 606, 607 (3d Cir. 2009). Plaintiff does not allege his statements were used against him

at trial and therefore fails to state a plausible claim for relief related to his right against self-incrimination. The Court dismisses without prejudice the Fifth Amendment claims at this time.

Plaintiff mentions the Sixth, Eighth, and Fourteenth Amendments, but he does not provide sufficient facts showing how his Sixth, Eighth, or Fourteenth Amendment rights were violated. As such, the Court dismisses these claims without prejudice.

In conclusion, the Court denies without prejudice Plaintiff's IFP application and dismisses without prejudice the federal claims at screening pursuant to its screening authority under §§ 1915(e)(2)(B) and 1915A. Plaintiff may submit an amended complaint within 45 days to the extent he can cure the deficiencies in his federal claims.[4] If he elects to submit an amended complaint, Plaintiff must also provide documentary evidence that he submitted his complaint and IFP application to prison officials for filing in October 2023. If Plaintiff is unable to do so, he must submit a new IFP application with a certified account statement covering the six-month period prior to his filing of the Complaint on May 1, 2024 (i.e. from November 2023-May 2024) and submit facts in support of equitable tolling. Failure to do so may result in the denial of his IFP application and dismissal of this action. An appropriate order follows.

May 1, 2025

_____
Hon. Madeline Cox Arleo, District Judge
United States District Court

---

[4] If Plaintiff chooses to submit an amended complaint, that complaint should be all-inclusive as it will replace his original complaint.